**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DONNA DARLENE WILLIAMS, ) | CASE NO. 1:15-CV-1028 |
| Plaintiff, ) | JUDGE LIOI |
| v. ) | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, ) Acting Commissioner of Social Security, ) | |
| Defendant. ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Donna Darlene Williams ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In February 2010, Plaintiff filed her applications for POD, DIB, and SSI alleging a disability onset date of September 1, 2009. (Transcript ("Tr.") 11.)  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On January 30, 2012, the ALJ found Plaintiff

not disabled. (*Id.*)  On May 10, 2013, the Appeals Council remanded the ALJ's decision for further administrative proceedings. (*Id.*)

On October 29, 2013, an ALJ held a second administrative hearing.  (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On March 26, 2014, the ALJ found Plaintiff not disabled.  (Tr. 21.)  On April 23, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)  On May 21, 2015, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 11, 12, 16.)

Plaintiff asserts the following assignments of error: (1) the ALJ erred in failing to give controlling weight to the opinions of Plaintiff's treating physicians, (2) the ALJ erred in discounting Plaintiff's credibility, and (3) the ALJ erred in failing to find Plaintiff disabled pursuant to Medical Vocational Rule 201.10.

## II.  EVIDENCE

**A.  Personal and Vocational Evidence**

Plaintiff was born in January 1959 and was 50-years-old on the alleged disability onset date.  (Tr. 183.)  Plaintiff completed the eleventh grade and was able to communicate in English.  (Tr. 58.)  She had past relevant work as a fast food worker, housekeeper/cleaner, and gas station cashier.  (*Id.*)

2

**B.    Medical Evidence**

    **1.    Medical Reports**

A 2003 MRI of Plaintiff's lumbar spine showed a central disc protrusion at L5-S1, along with mild hypertrophy and foraminal stenosis. (Tr. 415.) At L4-5 there was a broad-based disc bulge contacting the L4 nerve root and mild foraminal stenosis. (*Id.*) A 2005 MRI of the cervical spine revealed a small central and right-sided disc protrusion at C6-7 that did not "impact the adjacent cord." (Tr. 338.) A 2005 MRI of the lumbar spine showed broad-based disc bulges at L5-S1 and L4-5, but no osseous or soft tissue impingement upon the spinal canal or neural foramen. (Tr. 337.)

Plaintiff treated with her primary care physician Walid Arrabi, M.D., as far back as 2005 for complaints involving low back pain and fibromyalgia. (Tr. 361.) In 2006 Dr. Arrabi diagnosed Plaintiff with chest pain that was "unlikely to be cardiac in origin" and severe fibromyalgia. (Tr. 312.) A January 2007 EMG showed moderately severe carpal tunnel syndrome in Plaintiff's right wrist. (Tr. 417.)

In September 2007 Plaintiff was in a workplace accident that affected her neck and shoulder. (Tr. 448.) An October 2007 MRI of the cervical spine revealed a central disc herniation at C5-6 without any nerve impingement. (Tr. 424.) At C6-7 there was a central disc herniation compressing the ventral dural sac. (*Id.*) An MRI of Plaintiff's left shoulder taken in December 2007 showed mild tendinopathy and osteoarthritis. (Tr. 426.)

In November 2007, Cyril Marshall, M.D., examined Plaintiff. (Tr. 448.) Plaintiff complained to Dr. Marshall of pain in her neck, shoulder, and extending down her arm. (*Id.*) She also reported numbness in her thumb and in two fingers. (*Id.*) After her

accident at work, Plaintiff had participated in physical therapy and used a TENS unit. (*Id.*) Plaintiff missed no work as a result of the accident and was working with restrictions in place. (*Id.*) Dr. Marshall opined that the herniated discs in Plaintiff's cervical spine were directly related to her workplace injury. (Tr. 449.) In a December 2007 progress note, Dr. Marshall opined that Plaintiff experienced approximately 40 to 50 percent less pain, and her mobility, strength, and sleep had improved. (Tr. 445.)

A November 2008 x-ray of Plaintiff's lumbosacral spine showed multilevel lower lumbar disc space narrowing along with early degenerative disc disease and/or disc herniations. (Tr. 326.)

Plaintiff treated with Alla Model, M.D., in January 2009. (Tr. 354.) Plaintiff was taking Cymbalta, Gabapentin (Neurontin), and Vicodin for fibromyalgia. (*Id.*) She had run out of Cymbalta two weeks prior, causing her fibromyalgia symptoms to worsen. (*Id.*) Upon physical examination, Plaintiff had pain to palpation over her spine, multiple tender points in her extremities, and a painful range of motion in her knees. (Tr. 355.) She had no synovitis or edema, and her motor and sensory functioning were normal. (*Id.*)

In February 2009, Donald Mann, M.D., examined Plaintiff in connection with a workers' compensation claim. (Tr. 453.) Plaintiff reported that she experienced constant pain and stiffness in her neck. (*Id.*) Plaintiff, however, was able to work full-time at McDonalds with some restrictions and look after household members' needs. (Tr. 453-54.) On examination Plaintiff's neck range of motion was limited, her strength in her hands and shoulders were normal, her pin prick sensation was reduced in two fingers of the right hand, and her gait was normal. (*Id.*)

4

In November 2009, spinal specialist Sepideh Haghpanah, M.D., examined Plaintiff. (Tr. 346.)  On physical examination, Plaintiff's range of motion in her neck and back was limited due to pain, and Dr. Haghpanah noted multiple tender points throughout her body. (Tr. 348.)  Plaintiff's muscle tone, bulk, and strength were normal in all extremities, her sensation to light touch was intact, and her reflexes were normal. (*Id.*)  She was able to stand on her heels, toes, and on one leg. (*Id.*)  Dr. Haghpanah diagnosed lumbosacral spondylosis without myelopathy, myalgia and myositis, lumbar degenerative disc disease, and carpal tunnel syndrome. (*Id.*)  A May 2009 MRI of Plaintiff's lumbar spine showed broad-based disc herniations at L3-4 and L4-5 with foraminal narrowing, a central disc herniation at L5-S1, and multilevel disc dehydration. (Tr. 518.)

Between January and August 2009, Plaintiff treated with Ben Ortega, M.D., on a number of occasions for low back and neck pain. (Tr. 480-91.)  In May 2009, Dr. Ortega completed a form entitled "Physician's Report of Workability." (Tr. 456.)  Dr. Ortega opined that Plaintiff could return to work with restrictions from May 19, 2009, through June 19, 2009. (*Id.*)  He stated that Plaintiff should not squat, kneel, lift more than five pounds, or lift when bending. (*Id.*)  Plaintiff needed to be able to sit if she had increased back pain. (*Id.*)

On January 4, 2011, Plaintiff treated with Dr. Model for low back pain and diffuse pain all over her body. (Tr. 493.)  Dr. Model noted that Plaintiff had failed to attend an appointment with another physician and physical therapy. (*Id.*)  Plaintiff reported that she had been to physical therapy many times, but it increased her pain and did not do "any good." (*Id.*)

5

On November 11, 2011, Dr. Marshall completed an assessment of Plaintiff's ability to perform physical work-related activities. (Tr. 509-10.)  He opined that Plaintiff could lift one to two pounds frequently and five pounds occasionally. (Tr. 509.)  She could stand or walk for a total of 30 minutes in a full workday. (*Id.*)  Plaintiff could not stoop and was significantly limited in her ability to use her right hand and fingers for repetitive manipulative activities. (Tr. 510.)

Dr. Arrabi completed a similar physical assessment on November 14, 2011. (Tr. 512-13.)  He opined that Plaintiff could lift five pounds frequently and ten pounds occasionally. (Tr. 512.)  She could stand for a total of two hours and sit for a total of six hours in an eight hour workday. (*Id.*)  Plaintiff could never stoop, but could frequently reach. (Tr. 513.)

A December 2012 x-ray of Plaintiff's lumbar spine showed multilevel lower lumbar disc space narrowing. (Tr. 520.)  The x-ray potentially reflected degenerative disc disease and disc herniations. (*Id.*)

**2.     Agency Reports**

In May 2010, J. Joseph Konieczny, M.D., conducted a psychological examination of Plaintiff. (Tr. 376.)  Plaintiff reported that she worked at McDonalds 25 to 30 hours per week and had been a McDonalds' employee for 12 years. (Tr. 377.)  On a typical day, Plaintiff woke up, attended to her hygiene, dressed for work, and went to work until approximately 1:00 p.m. (Tr. 378.)  After returning home from work, Plaintiff engaged in household chores and watched television. (*Id.*)  She cooked, cleaned, did laundry, and went shopping. (*Id.*)

In June 2010, Lynne Torello, M.D., reviewed the record to assess Plaintiff's

6

physical abilities. (Tr. 399-406.)  She opined that Plaintiff could lift up to 20 pounds occasionally and ten pounds frequently; sit, stand, or walk for approximately six hours in an eight-hour workday; and occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. (Tr. 400-01.)  Plaintiff could never climb ladders, ropes, or scaffolds. (Tr. 401.) During January 2011, William Bolz, M.D., reviewed the record and affirmed Dr. Torello's opinion. (Tr. 413.)

In November 2013, Plaintiff attended a physical consultative examination with Hasan Assaf, M.D. (Tr. 546-55.)  Plaintiff reported that she cooked six to seven times per week, did laundry once a week, and shopped twice a week. (Tr. 549.)  Plaintiff watched television, listened to the radio, and read. (*Id.*)  On physical examination, Plaintiff's gait was normal, her manipulative function was normal, and her range of motion in her cervical spine, shoulders, and lumbar spine were somewhat limited. (Tr. 553-54.)  Dr. Assaf opined that Plaintiff had marked limitations in activities that required prolonged standing, walking, bending, lifting, and reaching with both arms. (Tr. 551.)

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

Plaintiff testified that in early 2013, she stopped working at McDonalds and began working as a delivery driver for an automobile part shop. (Tr. 36.)  When Plaintiff started the delivery position, she worked around 35 hours per week. (Tr. 40.)  Her hours decreased to 20 hours per week when her duties changed and she struggled to deliver larger and heavier quantities of parts.  (Tr. 37-40.)  Plaintiff stopped working as a delivery driver on October 19, 2013. (Tr. 40.)

Plaintiff began using a TENS unit four years prior to the hearing. (Tr. 44.)

7

Physical therapy made her condition worse. (*Id.*)  Plaintiff experienced sharp pain in her shoulders and underarms as well as swelling from her shoulders to her neck. (Tr. 48.)  Plaintiff's feet swelled, and she sometimes felt as though she was walking on glass. (Tr. 49.)  Lifting more than three or four pounds caused pain in Plaintiff's back and hips and weakness in her legs. (Tr. 53.)  She could stand for four hours in an eight-hour workday in 30 minute intervals. (*Id.*)  On a typical day, Plaintiff went to work for four to six hours. (Tr. 51.)  When she returned home, she completed as much dusting, dish washing, and cooking as she could. (*Id.*)

### 2. Vocational Expert's Hearing Testimony

Gene Burkhammer, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience. (Tr. 58.)  The individual would be able to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; could stand, walk, or sit for six out of eight hours in an eight-hour day; and occasionally use ramps and stairs, stoop, kneel, crouch, crawl, and reach overhead. (Tr. 58-59.)  The individual could never use ladders, ropes, or scaffolds. (Tr. 59.)  The individual would be limited to simple, routine tasks in an environment without strict production quotas. (*Id.*)  The VE testified that the hypothetical individual would be able to perform Plaintiff's past work as a fast food worker, housekeeping cleaner, and gas station cashier. (*Id.*)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered

disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the mpairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and*

9

416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. There has not been a continuous period of twelve months where the claimant has engaged in substantial gainful activity since September 1, 2009, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines with disc herniations at C5-6, C6-7, L3-4, and L5-S1, osteoarthritis of the left shoulder with mild supraspinatus tendinopathy, and depressive disorder NOS.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work with lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, sitting for six hours in an eight hour day, standing and walking for six hours in an eight hour day, occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional stooping, kneeling, crouching, and crawling, occasional overhead reaching and the claimant is limited to simple, routine tasks in an environment without strict production quotas.

6. The claimant is capable of performing past relevant work as a fast food worker, housekeeper/cleaner, and gas station cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision.

(Tr. 13-21.)

## V.  LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.     Plaintiff's Assignments of Error**

**1.   The ALJ's Analysis of Plaintiff's Treating and Examining Physicians' Opinions**

Plaintiff argues that the ALJ violated the treating physician rule with respect to Drs. Marshall, Ortega, Assef, and Arrabi.  Specifically, Plaintiff challenges the ALJ's decision to assign less than controlling weight to their opinions, arguing that the physicians' opinions were supported by medical evidence in the record, such as x-ray, MRI, and EMG reports.  Plaintiff, however, makes no effort to develop this argument.  She cites to no specific evidence in the record to support her assertions.  Nor does she explain how any medical evidence allegedly undermines the ALJ's treating source analysis.[1]  The Commissioner responds that the ALJ gave good reasons for giving little weight to these physicians' opinions.  For the reasons that follow, Plaintiff's argument is without merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic

---

[1]   Plaintiff also contends that the state agency reviewing physicians' opinions cannot be considered substantial evidence in support of the disability determination because these physicians did not review the entire record.  Plaintiff has failed to provide any legal support for her argument that the ALJ could not properly rely on the opinions of these physicians because the record was not complete at the time they rendered their opinions.  Nor has Plaintiff demonstrated how any alleged records these physicians lacked would have affected their opinions such that the ALJ should not have relied upon them. Accordingly, she has waived any argument on this point. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id*.

### a. Drs. Arrabi and Marshall

In assigning little weight to Drs. Arrabi and Marshall, the ALJ explained that the degree of restrictions the physicians recommended were inconsistent with Plaintiff's work activity. (Tr. 20.) An ALJ may consider an individual's work activity, along with all medical and other vocational activity, when making the disability determination. 20 C.F.R. §§ 404.1571, 416.971.[2] Here, Dr. Arrabi imposed limitations generally consistent

---

[2] An individual's work activity, even if it does not rise to the level of substantial gainful activity, may show that an individual is able to do more work than they actually did. 20 C.F.R. §§ 404.1571, 416.971. Here, the Appeals Council concluded that Plaintiff's earnings did not rise to the level of substantial gainful activity for a consecutive 12 months period after September 1, 2009, and remanded Plaintiff's case for further

13

with sedentary work, and Dr. Marshall opined that Plaintiff could lift up to five pounds and stand or walk for a total of 30 minutes in an eight hour workday.[3] (*Id.*)  The ALJ noted, however, that Plaintiff continuously worked, at least part time, from her alleged disability onset date, September 1, 2009, through October 2013. (Tr. 13-14, 16.)  The VE explained that Plaintiff's work during this period rose to the level of light work, which exceeded the degree of activity Drs. Arrabi and Marshall opined Plaintiff could perform. (Tr. 20, 57-58.)  As Plaintiff's work activity during the period at issue called into question the limitations Drs. Arrabi and Marshall recommended, the ALJ reasonably discounted the physicians' opinions.

With regard to Dr. Marshall, the ALJ further explained that Plaintiff's daily activities demonstrated that Plaintiff's physical abilities exceeded Dr. Marshall's extreme physical limitations. (Tr. 20.)  The ALJ recounted that on a typical day, Plaintiff went to work in the morning and performed household chores in the evening. (Tr. 16.)  She cooked six to seven times during the week, cleaned and did laundry once every week, and went shopping twice a week. (*Id.*)  The ALJ accurately recounted Plaintiff's characterization of her daily activities and reasonably concluded that these activities did

---

consideration. (Tr. 103-04.)  The Council did not prohibit the ALJ from considering the nature and extent of Plaintiff's work activity when evaluating the opinions of medical sources or Plaintiff's credibility.

[3] Sedentary work involves lifting no more than ten pounds and involves sitting, as well as occasionally walking and standing. 20 C.F.R. §§ 404.1567(a), 416.967(a).  Light work involves lifting no more than 20 pounds with frequent lifting and carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Even though the weight lifted may be very little, a job will be considered light work when it requires a good deal of walking or standing. *Id.*

not comport with the degree of limitation Dr. Marshall recommended. Accordingly, substantial support exists for the ALJ's analysis of Drs. Arrabi and Marshall's opinions.

### b. Dr. Ortega

The ALJ also provided good reason for assigning no weight to Dr. Ortega's opinion. The ALJ discounted the opinion because Dr. Ortega prescribed limitations that were only one month in duration. (Tr. 20.) In addition, Dr. Ortega recommended the restrictions for a time period prior to Plaintiff's alleged onset date of disability. (*Id.*) Given that Dr. Ortega's recommendations were insufficient to establish that Plaintiff had limitations that would endure 12 months or longer as is necessary to qualify for disability, *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A), and the doctor recommended the limitations for a period before Plaintiff claims she was disabled, the ALJ's treating source analysis with regard to Dr. Ortega is supported by substantial evidence.

### c. Dr. Assef

Although Plaintiff refers to Dr. Assef as a treating physician, Dr. Assef examined Plaintiff on only one occasion. As a result, he cannot be considered a treating source, and the ALJ was not required to provide good reasons for his decision to discount Dr. Assef's opinion. Nevertheless, where the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC. *See, e.g.*, *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.). Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2,

1996).

Here, the ALJ explained that he did not incorporate Dr. Assef's marked physical limitations into the RFC for two reasons that find substantial support in the record. (Tr. 20.)  First, the ALJ stated that objective evidence, including Dr. Assef's findings of normal reflexes, sensation, muscle strength, and gait did not support the marked limitations that Dr. Assef recommended. (*Id.*)  Second, Plaintiff's work activity and activities of daily living did not support marked limitations. (*Id.*)  The ALJ sufficiently explained his reasoning with regard to Dr. Assef and remand for further evaluation is not warranted.

### 2.  The ALJ's Credibility Analysis

Plaintiff argues that the ALJ failed to properly analyze her complaints of pain and to consider the medical record as a whole when evaluating her credibility.  In addition, Plaintiff contends that the ALJ failed to provide good reasons for discounting her statements.  For the reasons that follow, Plaintiff's arguments are not well taken.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).  The ALJ also must provide an adequate explanation for his credibility determination.  "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"

16

S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints.  See *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.* In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.  See *Felisky,* 35 F.3d at 1039-40 (citing 20 C.F.R. § 404.1529(c)).  Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors. *Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in his assessment of Plaintiff's condition. (Tr. 16-20.)  The ALJ

17

examined Plaintiff's daily activities, treatments and her responses to those treatments, the clinical examination findings, and the physicians' statements of record. (*Id.*)  While the ALJ did not discuss all of Plaintiff's complaints of pain and other symptoms, he recounted that Plaintiff complained of neck, back, and shoulder pain. (Tr. 17.)  Although an ALJ is required to *consider* all of the evidence in the record, he is not required to *discuss* each item of evidence the opinion.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2010) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) (An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.")  Accordingly, the ALJ was not required to discuss every piece of evidence, including all of Plaintiff's report symptoms, in order for his credibility determination to stand.

Additionally, the ALJ provided reasonable grounds for finding Plaintiff less than credible.  For example, the ALJ explained:

- Plaintiff had worked since her alleged onset date of disability, and her work was at a level close to substantial gainful activity in 2010, 2011, and 2013.  Her work history suggests that she is not in disabling pain. (Tr. 18.)

- Plaintiff engaged in a wide variety of daily activities and the fact that she performed household chores after coming home from work suggests that her pain is not as disabling as she has alleged. (Tr. 18.)  Plaintiff's activities included caring for her personal needs, cooking six to seven times per week, cleaning and doing laundry once a week, and shopping twice a week. (Tr. 16.)  She also watched television, listened to the radio,

and read. (*Id.*)[4]

- Physical examinations showed that Plaintiff did not have any neurological deficits. Despite a limited range of motion in her shoulders, neck, and lumbar spine, Plaintiff had normal reflexes, sensation, muscle strength, and gait. (Tr. 18.)

A review of the ALJ's decision demonstrates that the ALJ considered the record as a whole. The ALJ highlighted and analyzed evidence that was inconsistent with Plaintiff's complaints of disabling pain. As the ALJ provided sufficient reasons supported by the record for discounting Plaintiff's credibility, remand is not appropriate on this issue.[5]

### 3. Medical Vocational Rule 201.10

In her final assignment of error, Plaintiff contends that if the ALJ had accepted her treating and examining physicians' opinions limiting her to sedentary work, Plaintiff

---

[4] Plaintiff cites to *Romig v. Astrue*, No. 1:12-CV-1552, 2013 WL 1124669, at *5 (N.D. Ohio Mar. 18, 2013), for the proposition that the ALJ must explain how daily activities support or detract from a Plaintiff's credibility. In *Roming* the ALJ provided no discussion of how the plaintiff's activities weighed on her credibility, whereas in this case, the ALJ specifically explained that Plaintiff's ability to work in the morning and return home to perform a range of chores and other activities undermined her complaints of disabling pain.

[5] Plaintiff argues that the ALJ improperly discredited her because (1) she told her physicians that Gabaptentin improved her symptoms, and (2) she failed to attend physical therapy, which she contends caused greater pain. Even if this Court were to assume that these reasons did not support the ALJ's credibility analysis, the ALJ otherwise provided sufficient grounds to support his credibility finding such that any error Plaintiff alleges would be harmless. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)).

would qualify for disability under Medical Vocational Rule 201.10.  As previously discussed, the ALJ's decision to discount the opinions of Plaintiff's treating and examining physicians is supported by substantial evidence.  Accordingly, the ALJ was not required to adopt these physicians' findings and conclude that Plaintiff was disabled under the Medical Vocational Rules.  Thus, Plaintiff's final assignment of error fails.

## VI.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: January 6, 2016

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).**